ERNEST A. CRONIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88279. Promulgated May 19, 1938.

*Roy K. Dietrich, Esq.,* for the petitioner.
*James C. Maddox, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in gift tax for 1935 in the amount of $237.88.

Petitioner alleges that the respondent erred in the determination of the deficiency as follows:

(a) The Commissioner of Internal Revenue was in error in determining that the value of a transfer by gift of property, to-wit, $25,000.00, Provident Mutual Life Insurance Company Single Premium Life Insurance Policy No. 715768, irrevocably assigned to donor's daughter on December 30, 1935, was its cost at time of such assignment, to-wit, $17,923.25, and not as petitioner claims and as is provided by the very terms of the contract of insurance itself, namely, the cash surrender value at the time of any assignment or transfer, plus the prepaid insurance, if any, to the date of the gift, to-wit, $16,237.50.

(b) The Commissioner of Internal Revenue was in error in determining that the value of a transfer by gift of property, to-wit $25,000.00, Provident Mutual Life Insurance Company Single Premium Life Insurance Policy No. 715770, irrevocably assigned to donor's daughter on December 30, 1935, was its cost at time of such assignment, to-wit, $17,923.25, and not as petitioner claims and as is provided by the very terms of the contract of insurance itself, namely, the cash surrender value at the time of any assignment or transfer, plus the prepaid insurance, if any, to the date of the gift, to-wit $16,237.50.

The deficiency notice upon the basis of which this proceeding was brought reads in part as follows:

Reference is made to your protest of July 23, 1936, filed with the Internal Revenue Agent in Charge, St. Louis, Missouri, which was made the subject of a conference in that office relative to the deficiency of $237.88 in your Federal gift tax liability for the calendar year 1935.

Your protest is directed against the increase in value of the two insurance policies returned in items 1 and 2 of Schedule A. You contend that the Bureau's action in determining the value of these policies in accordance with the provisions of Regulations 79 (1936 Edition) relating to gift tax under the Revenue Act of 1932, as amended and supplemented by the Revenue Acts of 1934 and 1935 was erroneous for the reason that the values returned were based upon information supplied by the insurance companies, computed in accordance with the provisions of Regulations 79, promulgated October, 1930, which applied in the case of the assignments in question.

An examination of the evidence on file discloses that the two policies under consideration are single premium policies. You are advised that Regulations 79 (1936 Edition) applies to all gifts made in 1935. You are further advised that in the case of a gift of a single premium policy, the value of such gift is the equivalent of what such policy would cost as of the date of assignment for the amount of insurance as paid up, including paid-up additional insurance, if any, due to the accumulation of dividends. It should be noted in this connection that this method of valuing a single premium policy has been used since the Gift Tax Act of 1932 has been in effect and, therefore, was incorporated as a part of the revised regulations.

Accordingly, the adjustments set forth in Bureau letter of June 25, 1936, resulting in a proposed deficiency of $237.88, are hereby affirmed.

The essential facts have been stipulated.

The petitioner is a resident of Kansas City, Missouri.

On October 2, 1933, the petitioner, then 61 years of age, took out life insurance policies Nos. 715768 and 715770 on his own life with the Provident Mutual Life Insurance Co. of Philadelphia, Pennsylvania.

Both were single premium life policies and the cost to the petitioner of each policy was $17,259.50. In each policy the beneficiary named was petitioner's daughter, Katharine Cronin, if living; otherwise the proceeds were to be paid to his executors, administrators, or assigns. The petitioner reserved the right to revoke and to change the beneficiary.

Under "General Provisions" each policy provided as follows:

*Dividends.*—The proportion of divisible surplus accruing upon this Policy (hereinafter called Dividends) shall be ascertained by the Company yearly. At the end of each policy year the Dividends apportioned to this Policy shall be, as the application for this Policy may direct, either (a) payable in cash, or (b) used to purchase participating Paid-Up Additions to this Policy, or (c) left to accumulate to the credit of this policy with interest at such rate as the Company may each year declare but never less than the yearly rate of three and one-half per cent, payable with the proceeds of this Policy or withdrawable in cash at any time on demand. If no direction for the disposition of Dividends shall be made, they will be held to accumulate under clause (c) or applied as may be otherwise required under the laws of the State in which this Policy is delivered. The disposition of current and subsequent Dividends may be changed by a written direction filed with the Company at its Home Office not later than thirty-one days after the end of any policy year. The Insured, without the joinder or consent of any revocably designated Beneficiary or any irrevocably designated Beneficiary not an absolute owner of this Policy, may make such written direction and may receive, upon execution of the proper receipts, all Dividends payable under clause (a) or withdrawable under clause (c). When the sum of the cash value of this Policy and any accumulated Dividends withdrawable under clause (c) shall equal the face amount of this Policy, the Company, upon written request at that time of all parties in interest, will pay the face amount of this Policy less all indebtedness on this Policy.

\*     \*     \*     \*     \*     \*     \*

*Non-Forfeiture and Loan Provisions:*

(a) *Cash Value.*—Upon surrender of this Policy on any anniversary of its date by all parties in interest, the Company will pay the cash value of this Policy less all indebtedness on this Policy.

The cash value of this Policy is the then reserve hereon (omitting fractions of a dollar per one thousand of insurance) increased by the cash value of any outstanding Paid-Up Additions and diminished by a surrender charge from the first to the ninth policy years inclusive not exceeding the following percentages of the face amount of this Policy: for the first and second policy years $1\frac{6}{10}$ per cent; for the third policy year $1\frac{4}{10}$ per cent; for the fourth policy year $1\frac{2}{10}$ per cent; for the fifth policy year 1 per cent; for the sixth policy year $\frac{8}{10}$ per cent; for the seventh policy year $\frac{6}{10}$ per cent; for the eighth policy year $\frac{4}{10}$ per cent; for the ninth policy year $\frac{2}{10}$ per cent. The cash value of any Paid-Up Additions shall be the then reserve thereon, provided, however, that the cash value of any Paid-Up Additions shall not be less than the Dividends used in purchase thereof.

Each policy provided further that its cash or loan value after it had been in force for two years was $647 per $1,000.

On December 26, 1935, the petitioner executed an instrument, called "Change of Beneficiary and Election of Method of Settlement," which reads as follows:

I, Ernest A. Cronin, do hereby irrevocably change the Beneficiary or Beneficiaries under Policies Nos. 715768 and 715770 issued on my life by PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, to the persons, in the manner and upon the terms, conditions and contingencies hereinafter set forth, hereby relinquishing all rights, privileges and incidents of ownership in said Policies:

FIRST: If the proceeds of said Policies or either thereof shall become payable by reason of my death, the Company shall retain and make settlement of the aggregate proceeds of said Policies so becoming payable as follows:

(a) If my daughter, Katharine Cronin (born April 24, 1921), shall be living at my death, the Company shall retain said proceeds under Option 1 contained in said Policies and pay interest thereon monthly to my said daughter if living when said interest payments shall respectively become payable, without right of withdrawal, but with right in her at any interest payment period after she shall have attained age twenty-five to direct that interest payments to her shall cease and that the Company shall apply said proceeds so as to provide an income to said daughter during her remaining lifetime, with income payments certain for ten, fifteen or twenty years, as said daughter may at that time designate, the amount of each income payment to be 103% of the annuity which the sum so applied would purchase on the basis of the Company's single premium rates then in effect for a life annuity of the kind elected, adjusted to provide for the immediate payment of the first income payment.

(b) If my said daughter shall be deceased at my death, or shall thereafter die while receiving interest or income payments certain, the Company shall at the death of the survivor of my said daughter and me pay said proceeds, together with any accrued interest thereon, or the commuted value of any then unpaid income payments certain, as the case may be, share and share alike, to the then living lawful children of my said daughter, and in default of a then living lawful child of my said daughter to her Executors or Administrators. The words "child" and "children" as used herein shall not include a grandchild or grandchildren or more remote descendants.

SECOND: Any moneys which may become payable to a minor hereunder shall be paid only to the legally appointed guardian of such minor.

THIRD: The Company, in determining the persons comprising any class mentioned in this instrument, or any facts relating to any persons or beneficiaries mentioned in this instrument, either as a class or otherwise, their names, addresses, ages and dates of death may rely solely upon an affidavit by any one of said persons or beneficiaries and is hereby relieved and discharged from all liability and responsibility in making payments in accordance therewith.

FOURTH: To the extent permitted by law, it is hereby provided that no beneficiary entitled under the terms of this instrument to receive any part of the proceeds of said Policies or any interest, installment or other payment shall be permitted to commute, anticipate, encumber, alienate or assign the same or any part thereof except as may be otherwise expressly provided herein and that no interest, principal or other payments under this instrument shall be in any way subjected to such beneficiary's debts, contracts or engagements nor to any judicial processes to levy upon, subject or attach the same for payment thereof.

FIFTH: Any Method of Settlement heretofore elected under said Policies or either thereof is hereby revoked and superseded.

SIXTH: This instrument is subject to all the terms and conditions contained in said Policies and the Optional Methods of Settlement therein not inconsistent with the terms and conditions hereof.

EXECUTED this 26th day of December 1935.

Executed in the presence of—

F. P. LOGAN, Jr.                                        ERNEST A. CRONIN [SEAL]

The Provident Mutual Life Insurance Co. of Philadelphia accepted this instrument under date of December 30, 1935, stating: "IT IS HEREBY AGREED that Settlement under said Policies shall be made in accordance with the foregoing Change of Beneficiary and Election of Method of Settlement."

The cash surrender value of each policy on December 30, 1935, was $16,237.50. This amount was returned by the petitioner as the value of the gift of each of the policies in the gift tax return which he filed for the calendar year 1935. In determining the deficiency herein the respondent increased the value of each policy as reported in the gift tax return to $17,923.25, which is the amount each would have cost the petitioner if taken out by him on December 30, 1935.

The only question submitted for our determination in this proceeding is the value for gift tax purposes of the two above described insurance policies on December 30, 1935, the date on which the company approved the action of the insured in irrevocably naming his daughter as beneficiary of both policies.

Pursuant to his regulations, article 2 (5) of Regulations 79, the respondent determined that the naming of the beneficiary of the policies without reservation of a power to revoke constituted a gift on which the petitioner is subject to the gift tax imposed by the Revenue Act of 1932, and that the value of the gift is the amount that similar policies would have cost the insured at that time.

The following provisions of the Revenue Act of 1932 are applicable:

SEC. 501. IMPOSITION OF TAX.

(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *

(c) The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject

to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift.

SEC. 506. GIFTS MADE IN PROPERTY.

If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

The pertinent provisions of Regulations 79 are as follows:

ART. 2. *Transfers reached.*—The statute imposes a tax whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible, or intangible. Thus, for example, a taxable transfer may be effected by the declaration of a trust, the forgiving of a debt, the assignment of a judgment, the assignment of the benefits of a contract of insurance, or the transfer of cash, certificates of deposit, or Federal, State, or municipal bonds. * * * Inasmuch as the tax also applies to gifts indirectly made, all transactions whereby property or property rights or interests are donatively passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. In the following examples of transactions resulting in taxable gifts, it will be understood that the transactions occurred after the date of the enactment of the statute (June 6, 1932), and were not for an adequate and full consideration in money or money's worth:

* * * * * * *

(5) If the insured assigns a life insurance policy, or designates a beneficiary in such a policy, but does not retain what amounts to a power of revocation (as, for example, the right to surrender or cancel the policy, the right to obtain a loan against the policy or its surrender value, or a right to change the beneficiary or assignee, if by the exercise of such latter right the proceeds of the policy might be made payable to the insured, his estate, or otherwise for his benefit), such assignment or designation constitutes a gift, even though the right of the assignee or beneficiary to receive the proceeds is conditioned upon his surviving the insured. * * *

ART. 19. *Valuation of property.*—(1) *General.*—The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *

* * * * * * *

(9) *Life Insurance and Annuity Contracts.*—The value of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. * * *

* * * * * * *

*Example:* A donor owning a life insurance policy on which no further payments are to be made to the company, (e. g., a single premium policy or paid-up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured.

No question is raised in the pleadings as to petitioner's liability for a gift tax on the transaction, and we shall therefore assume that such liability exists, as the respondent has determined, and limit our

inquiry to the question of the value of the policies on the given date in accordance with the allegations of error contained in the petition, as set out above.

The statute prescribes no particular method for determining the value of insurance policy contracts as distinguished from other property. It provides simply that the value of the gift for estate tax purposes is the value of the property given at the date of the gift. The value of property at any given date is a question of fact to be determined from all the attendant circumstances. The respondent's determination of the value of the policies here involved on December 30, 1935, admittedly was made in accordance with article 19 of Regulations 79 above, and if the regulation is sound the respondent's determination must stand.

The Commissioner's regulations ordinarily are to be given great weight by the courts, particularly where they relate to administrative matters or where they undertake to construe or clarify an ambiguous statute. *United States* v. *Hermanos y Compania*, 209 U. S. 337; *Maryland Casualty Co.* v. *United States*, 251 U. S. 342; *Koshland* v. *Helvering*, 298 U. S. 441. On the other hand, the Supreme Court has said that a regulation which does not carry into effect the will of Congress as expressed by the statute but "operates to create a rule out of harmony with the statute, is a nullity." *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129.

A regulation to be valid must not only be consistent with the statute, but must be reasonable. *International Railway Co.* v. *Davidson*, 257 U. S. 506.

In *Helvering* v. *Taylor*, 293 U. S. 507, the Supreme Court said:

* * * The fact that the Commissioner's determination of a deficiency was arbitrarily made may reasonably be deemed sufficient to require the Board to set it aside. Cf. *Appeal of Bruce & Human Drug Co.*, 1 B. T. A. 342; *Appeal of Acorn Refining Co.*, 2 B. T. A. 253; *Appeal of Index Notion Co.*, 3 B. T. A. 90.

Where the statute sets up the value of property at the date of the gift as the measure for the tax liability, we do not think that it is within the province of the Commissioner to prescribe by regulation a restricted method for determining the value of any particular class of property.

The respondent's valuation of the insurance policies here under the method prescribed in the quoted regulation is at best arbitrary and inconclusive. The cost of a similar new policy may be more or less than the present value of an existing policy, depending on factors which the regulation disregards. Premium rates might increase or decrease from year to year without affecting the value of an existing policy. The age and physical condition of the insured are also factors that would enter into the cost of a new policy.

Since, as we believe, the respondent's method of determining the value of the policies in question was erroneous, we can not accept the result which he has reached as prima facie correct if there is any substantial evidence upon which a different value may be determined. Cf. *Reinecke* v. *Spalding*, 280 U. S. 227; *Alexander Sprunt & Son, Inc.* v. *Commissioner*, 64 Fed. (2d) 424.

It has been stipulated that the cash surrender value of the policies in question on December 30, 1935, was $16,237.50 each. While their cash surrender value does not conclusively establish their market value, *Lucas* v. *Alexander*, 279 U. S. 573, it is nevertheless substantial evidence of market value and it is the only evidence of value which the record offers, except for the further stipulation as to what would have been the cost of similar new policies.

In *Lucas* v. *Alexander, supra*, the Supreme Court found on the evidence of record in that case that two endowment life insurance policies had a value greater than their loan or cash surrender value. The policies there "participated in the surplus of the company and 'dividends' properly allocable to each were set aside or ascertainable on its books each year, but were payable only at the end of the tontine period of 20 years and only to holders of policies still in force at that time." The Court said in its opinion:

> It is familiar knowledge that the source of dividend accumulations upon insurance policies is interest upon investments of the company and savings effected from estimated future expenses and from death payments covered by premiums, with appropriate "loadings" to give a margin of safety, which the policyholders have paid. In accordance with the usual practice of life insurance companies, under the system of accounting employed by the insurer in the present case, the amount of reserve set aside by the company to meet its policy liability and dividend accumulations provisionally apportioned to each policy was ascertained or ascertainable on the books of the company at the end of each year. During the policy year which included March 1, 1913, the insurance reserve liability thus ascertained on each of the present policies was $40,600 and the dividend accumulation on each, which both courts below found had accrued on March 1, 1913, was $6,800, making a total of reserve and accumulations applicable to each policy of $47,400. These items with subsequent annual additions totaled, at the maturity of each policy, for the former $50,000 and for the latter $10,398.50, which, taken together, made up the total payment received by the taxpayer on each policy. They constitute a complete record and determination of the actual economic gain annually accruing upon the policies which was ultimately realized by the taxpayer, and they provide an adequate basis for ascertaining the proportion of the total value realized which had accrued on March 1, 1913. * * *

In the instant case the policies had no tontine feature. The earnings of the company were apportioned to the policies each year and were reflected in their cash surrender value. There are no other terms or conditions stated in the policies which appear to give them any greater or less actual value than their cash surrender value.

The value of property at a given date has been generally accepted to be the price at which the property would change hands between a willing buyer and a willing seller. See *Walls* v. *Commissioner*, 60 Fed. (2d) 347; *Williams* v. *Commissioner*, 45 Fed. (2d) 61; *Helvering* v. *Walbridge*, 70 Fed. (2d) 683. The parties have stipulated that the cash surrender value of each of the policies in question was $16,237.50. This fact is the best evidence before us of the value of the policies at the date of the gift and is sufficient, we think, to overcome the presumption attaching to the respondent's determination that the policies had a value in excess of that amount. There is nothing in the evidence to indicate that a greater price than their surrender value to the issuing company would have been paid for them by any one else.

We therefore determine on the evidence before us that the value of the policies at the date of the gift was $16,237.50 each, as reported by the petitioner in his gift tax return.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, BLACK, MELLOTT, and DISNEY dissent.