MARY H. HAINES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87725. Promulgated June 7, 1938.

*C. Russell Phillips, Esq.*, for the petitioner.
*E. C. Algire, Esq.*, for the respondent.

## OPINION.

BLACK: In this proceeding there is no dispute between the parties that taxable gifts have been made of certain insurance policies by the petitioner to her four children. These gifts were made in the taxable year and petitioner has returned them for gift tax purposes and has paid the tax thereon. The values at which the petitioner returned the gifts were the cash surrender values of the policies. The Commissioner has rejected these valuations and has computed the values in accordance with article 19 (9) of Regulations 79 (1936 Edition).

Section 506 of the Revenue Act of 1932 provides: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Article 19 of Regulations 79 deals with the valuation of property for gift tax purposes, and paragraph (9) thereof deals with the valuation of life insurance and annuity contracts and is printed in the margin.[1]

In contending that the value of the insurance policies taken out by petitioner in behalf of her children and paid for by single lump sum premiums is represented by their cash surrender values, petitioner argues that the gift tax is an excise tax upon the value of the property which passes from the donor to the donee as the subject of the gift and that this value is not necessarily controlled by the cost of the thing given, as the Commissioner has endeavored to provide in his regulations dealing with the valuation of life insurance policies. The petitioner's argument may be summed up by the following quotation taken from her brief:

The fact that insurance companies assume risks and make a charge for doing so which reduces the salable value of the contract from the moment of its issue is of no importance. The true test of value is what such contracts can be sold for, not what it will cost to turn around and buy another one from the insurance company which chooses to make a service charge for issuing another.

Petitioner further argues in her brief:

It is especially to be noted that the petitioner in this case did not give away the premium. The premium she paid to the insurance company. It was the policies which were the subject of the gift and not the amount of the premiums. To say that the policies are worth the amount of the premiums is to say that an insurance company should work for nothing, because its services are worthless. Such a position is untenable.

---

[1] (9) *Life insurance and annuity contracts.*—The value of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. As valuation through sale of comparable contracts is not readily ascertainable when the gift is of a contract which has been in force for some time and on which further premium payments are to be made, the value may be approximated, unless because of the unusual nature of the contract such approximation is not reasonably close to the full value, by adding to the interpolated terminal reserve at the date of the gift the proportionate part of the gross premium last paid before the date of the gift which covers the period extending beyond that date.

The examples given below, so far as relating to life insurance contracts, are of gifts of such contracts on which there are no accrued dividends or outstanding indebtedness.

Example: A donor purchases from a life insurance company for the benefit of another a life insurance contract or a contract for the payment of an annuity; the value of the gift is the cost of the contract.

    \*     \*     \*     \*     \*     \*     \*

Example: A donor owning a life insurance policy on which no further payments are to be made to the company (e. g., a single premium policy or paid-up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured.

Respondent relies upon his regulations quoted in the margin, *supra*, and in support argues that the cash surrender values represent the minimum values, the forced sale values, citing *Lucas* v. *Alexander*, 279 U. S. 573; *Gustav Anderson*, 26 B. T. A. 1208; and that in the instant case the premiums paid by the insured represented the market value of the policies on the dates of the gifts; that was the amount which similar policies of life insurance upon the lives of the same age, sex, etc., as the insured were being sold for; that such premiums were based upon the probable remaining life of the insured as determined by mortuary tables, citing *Ithaca Trust Co.* v. *United States*, 279 U. S. 151.

We consider that the issue involved in the instant case is essentially the same as that which was raised in the recent case of *Ernest A. Cronin*, 37 B. T. A. 914. In that case the two life insurance policies which were the subject of the gift tax were single premium policies, with cash surrender values. There were no paid up additions to the policies and there were no dividends standing to the credit of the policies. The Commissioner had valued the policies at the amounts which it would have cost the petitioner to take them out if taken out by him on the date the gift was made. In doing so the Commissioner followed article 19 (9) of Regulations 79, the same regulation that was applied in the instant case.

In that case we declined to give a conclusive effect to the Commissioner's regulations, stating that "The respondent's valuation of the insurance policies here under the method prescribed in the quoted regulation is at best arbitrary and inconclusive." We thereupon held that the value of the policies for gift tax purposes under the evidence in that case was their cash surrender values on the date of the gifts. In that connection we said:

It has been stipulated that the cash surrender value of the policies in question on December 30, 1935, was $16,237.50 each. While their cash surrender value does not conclusively establish their market value, *Lucas* v. *Alexander*, 279 U. S. 573, it is nevertheless substantial evidence of market value and it is the only evidence of value which the record offers, except for the further stipulation as to what would have been the cost of similar new policies.

In the instant case the cash surrender value of each policy has been stipulated. It is also clear that neither policy had any paid up additions or dividends standing to the credit of the policy because the dates of the gifts of the policies were the dates of the policies themselves. In addition to the stipulated cash surrender values of the policies in question, petitioner offered in evidence the testimony of one witness, Louis J. Santamarie, who testified that the policies could not have been sold to outsiders for more than their cash surrender values.

We do not attach a great deal of importance to the testimony of this witness on this point. His testimony established that he was an experienced underwriter in the sale of insurance policies by life insurance companies to the public, but his testimony failed to show that he had such experience or knowledge of the sale of insurance policies by the insured by assignment to outsiders as would qualify him to give the Board an expert opinion as to what life insurance policies would sell for under such circumstances. Therefore we do not regard his testimony as of any particular value in the determination of the issue we have here to decide.

However, without his testimony, the stipulated facts in the instant case are as strong for petitioner as they were for the taxpayer in *Ernest A. Cronin, supra.* Therefore, following that case, we hold for petitioner.

In the *Cronin* case gifts of the policies were not made until a little more than two years after the date of the issuance of the policies, whereas in the instant case the dates of the gifts of the policies were the dates of their issuance, but we do not think that the differences in fact in this respect affect the result. The controlling fact in the *Cronin* case was that the policies there involved had certain cash surrender values, with no additions of paid up insurance and no dividends standing to the credit of the policies, and we held that those surrender values represented the values of the policies at the date of the gift rather than what it would cost the insured to take out similar policies of insurance at his attained age.

Here it has been stipulated what the cash surrender values of the policies were immediately following the dates of the gifts and there are no additions of paid up insurance and no accumulations of dividends to the credit of the policies.

Therefore, following the holding of the Board in the *Cronin* case, we decide the only issue involved in favor of petitioner.

*Decision will be entered for the petitioner.*