**BLAFFER v. COMMISSIONER OF INTERNAL REVENUE.**
No. 8992.

Circuit Court of Appeals, Fifth Circuit.
April 26, 1939.

Rehearing Denied May 25, 1939.

See 103 F.2d 1007.

Walter E. Barton, of Washington, D. C., for petitioner.

Helen R. Carloss, Sewall Key, and Claude R. Marshall, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The United States Board of Tax Appeals determined R. L. Blaffer's gift tax deficiency liability to be $2,117.71 for the year 1934. The appeal from the decision of the Board is brought to this court by petition for review.

The material facts as disclosed by the record and found by the Board are these: R. L. Blaffer married Sarah Campbell Blaffer on April 22, 1909. At all times material to this case he and his wife have been legal residents of Texas. When the petitioner was married he owned two life insurance policies. One policy had a cash value of $192 and the other had no cash value. After the marriage the premiums on these policies and subsequently acquired policies were paid from community funds. Mrs. Blaffer, wife of petitioner, was named as beneficiary in all the policies, but Blaffer had the right under their terms to change the beneficiary at will.

On December 29, 1934, Blaffer made an irrevocable assignment of his interest in and to the five policies of life insurance here in question. The policies had a combined cash surrender value of $36,485.68 and were assigned to R. L. Blaffer & Company as trustee for the petitioner's wife and children.

Blaffer reported one half of the value of the policies in his gift tax return for 1934. The Board determined that the entire value of the policies should have been included in the gift tax return. It is Blaffer's contention that inasmuch as the premiums on the policies were paid from community property after his marriage he did not own a greater interest in the policies than one half of their cash surrender value. This contention is without merit. The Revenue Act of 1932 imposed a tax upon the transfer of property by gift and we are of opinion that the total value of the policies transferred to the trust by irrevocable assignment should be included in his gift tax return for 1934, notwithstanding the fact that the premiums on such policies were paid in whole or in part with community funds. When a policy of insurance is irrevocably assigned, the value of the gift, for tax purposes, is the net cash surrender value of the policy. Revenue Act of 1932, § 501, 47 Stat. 245, 26 U.S.C.A. § 550 and note; Treas.Regulations 79 (1933 Ed.) Art. 1(5).

Under the Texas decisions the payment of premiums on the policies from community funds gave the wife no vested interest in them. Under the facts of this case the incidents of ownership that ordinarily relate to property acquired with community funds do not attach to these life insurance policies. Mrs. Blaffer was named as beneficiary of the five policies and had the petitioner died without changing the beneficiary, the proceeds, under the Texas cases, would have become payable to her as her separate estate and not as community property. On the other hand, if the beneficiary had been changed she could have claimed no part of the proceeds upon Blaffer's death, nor in the absence of fraud, any reimbursement for any part of the premiums paid from community funds. Fain v. Fain, Tex.Civ.App., 93 S.W.2d 1226; Rowlett v. Mitchell, 52 Tex.Civ.App. 589, 114 S.W. 845; Jones v. Jones, Tex.Civ.App., 146 S.W. 265; Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585.

The cash surrender value of an insurance policy is merely a potential asset of the community. The cash surrender value does not become an actual asset until the money is reduced to possession by surrender and cancellation of the policy. In this case, Blaffer, the husband, made a gift of the policies and under the Texas law he alone had the authority to effect the transfer. The assignment to the insurance trust was not merely a transfer of a one half interest in the policies. The trustee received the total interest.

The irrevocable assignment terminated all incidents of Blaffer's ownership and control of the insurance policies in question. It effected a completed gift, and under the statute and regulations the entire tax was correctly assessed against the husband.

The petition is denied and the judgment of the Board is affirmed.

SIBLEY, Circuit Judge (dissenting).

I agree that Blaffer effected the transfer of the policies as a gift, and that he alone had the power to do it, and that the total

cash surrender value of them was subject to the gift tax. But I think that as respects that surrender value he acted not for himself, but for himself and wife, being the manager of their community, and the tax thereby incurred fell equally upon them both. The community property laws of Texas, and their operation in connection with the tax laws of the United States, were authoritatively examined in Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L. Ed. 249. It was said these laws provide that the husband shall have "power of management and control such that he may deal with community property very much as if it were his own. In spite of this it is settled that the wife has a present vested interest in such property. Her interest is said to be equal to the husband's." It was held that each was entitled to be separately taxed as respects community income. So they are to be separately taxed on community gifts, although the husband makes them. The gifts here were of rights incident to insurance policies on the husband's life, some taken out by him before and some after the marriage, but all, with minor exceptions, maintained by premiums paid out of community funds, and in all he had the right to change the beneficiary at will. I think the turning point in the case is that these policies have two aspects. In one aspect they were insurance, contracts to pay money at the insured's death. In the other aspect they were an investment, contracts by the express provisions of which the insurance could at any time be exchanged for present cash, in amounts which increased with each premium paid. These latter contracts at the date of the gift aggregated $36,485. They had some resemblance to savings accounts. The transfer of pure term life insurance is hardly a valuable gift. Such insurance is not assets in bankruptcy, but only the cash surrender value is assets. Cohn v. Malone, Trustee, 248 U. S. 450, 39 S.Ct. 141, 63 L.Ed. 352; Cohen v. Samuels, 245 U.S. 50, 38 S.Ct. 36, 62 L. Ed. 143; Burlingham v. Crouse, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A., N.S., 148. The Gift Tax Act makes no special mention of insurance policies, but declares that when a gift is made in property the value thereof at the date of the gift fixes the amount of the gift. This is interpreted, Treasury Regulations 79 (5), to include the irrevocable assignment of a life insurance policy in the amount of the net cash surrender value. As in case of bankruptcy the pure insurance is disregarded and the cash surrender value is alone regarded. Whose cash surrender value was it—Blaffer's, or the community's? I answer, the community's. If instead of giving it away he had collected it, without doubt it would be community property. If Blaffer had gone into bankruptcy, without doubt this surrender value would be assets of the community estate, and not his own. Community money paid in premiums created this value. By every reasonable test this cash surrender value, which alone is regarded as tangible enough for its transfer to be presently taxed, belongs to the community.

There is no authority in point to the contrary.[1] There are a number of Texas cases, stemming from Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585, holding that the proceeds of insurance on the life of a husband or a wife payable to the other do not at the death of the insured fall into the community. The court gives as the reason that such proceeds arise only on the death of the spouse, which terminates the community, and are not property "acquired by either the husband or wife during marriage" so as to be community property within the statute defining it. Revised Civil Statutes, Art. 4619, subd. 1, Vernon's Ann.Civ.St. art. 4619, subd. 1. Where policies, as these do, provide for a contractual cash surrender value, the community is not dissolved by death before the right can mature. The right is a property fully acquired during the existence of the community, the money can be called in at any time. That is why it has a present tangible value—resembling, I repeat, a savings account. I do not think the case of Fain v. Fain, Tex.Civ.App., 93 S.W.2d 1226, which dealt with a settlement in a divorce case, ought to control this case where there is no divorce but the community continues. The Fain case is by an inferior court and was rested on cases which themselves dealt with the proceeds of insurance, not with cash surrender values, and which went largely on the idea that in case of divorce, as in case of death, the community was ended and the wife had no further insurable interest in her husband's life. Here the United States are taxing the transfer of a present right to collect at will $36,485,

[1] In Louisiana the view has been taken that the community owns the cash surrender value. Tulane Law Review, Vol. XIII, p. 424.

neither death nor divorce nor the proceeds of insurance being involved. It seems to me that the right belongs to the community, that the community gave it away, that the community was made poorer by parting with it, and the community owes the tax on the transfer of this right.