**RYERSON v. UNITED STATES.**
No. 47078.

District Court, N. D. Illinois.
March 31, 1939.

On Rehearing June 29, 1939.

Bell, Boyd & Marshall, of Chicago, Ill., for plaintiff.

Wm. J. Campbell, of Chicago, Ill., for the United States.

SULLIVAN, District Judge.

This suit is brought under the Tucker Act, United States Code, title 28, Sec. 41 (20), 28 U.S.C.A. § 41(20), for the recovery of gift taxes for the years 1934 and 1935. The tax was assessed by the Commissioner of Internal Revenue pursuant to the Gift Tax Act of 1932 as amended, 26 U.S.C.A. § 550 et seq. Plaintiff paid the tax and now alleges that it was wrongfully exacted. The total amount for both years is $3,764.24 plus interest.

Only issues of law are involved and they may be stated as follows:

1. Where a gift is made of a fully paid life insurance policy, is the cash surrender value on the date the gift is made determinative of the fair market value for gift tax purposes, and

2. Where a gift is made in trust are the the beneficiaries, rather than the trust, the donees of the gift for the purpose of determining the number of exclusions of $5,000 allowable under Sec. 504(b) of the Revenue Act of 1932, 26 U.S.C.A. § 553 (b)?

Prior to 1934 plaintiff had purchased two insurance policies on her own life in the face amount of $100,000 each and in 1934 she had each of these policies split up into two fully paid single premium policies, each in the amount of $50,000. For the purpose of clarity I shall designate the policies as policies A, B, C, and D.

In December of 1934, plaintiff assigned policies A and B to her two sons. The cash surrender values of the policies on the

date of assignment were $40,696.50 each. A few days later she assigned policies C and D when the cash surrender values of these two policies were $40,286.00 each.

It is stipulated that no greater amount could have been realized on the four policies by surrendering, or borrowing on them, or otherwise, than their cash surrender value. Plaintiff paid her gift tax on the basis of the this cash surrender value, but the Commissioner refused to accept this as their true value. He chose instead to value them at the price the same insurance company would have charged for similar policies on the date of the assignment on the life of a person of the same age, sex, and condition of health as the plaintiff was at that time. This value he found to be $42,856.50. Upon this basis, the Commissioner assessed and plaintiff paid, the additional tax which is in suit.

With respect to policies A and B no controversy exists except as to their valuation. Regarding policies C and D, however there is also a controversy concerning the number of exclusions to be allowed under Sec. 504(b) of the Gift Tax Act of 1932.

Considering the first issue, we find that Sec. 506 of the Gift Tax Act of 1932 provides: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." U.S.C.A. Title 26, Sec. 555.

Article 19 of Treasury Regulation 79, promulgated under the Revenue Act of 1932, reads: "The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell."

Plaintiff maintains that the values here, with a willing buyer and a willing seller, could be no higher than those set forth in the cash surrender values. The defendant contends that this is merely an arbitrary figure set by the insurance company, and that if a policy holder wishes to surrender his policy he is forced to accept this predetermined price. This, defendant says, is merely its forced sale value and cannot be regarded as a reliable criterion of real value.

The Board of Tax Appeals has consistently held that the cash surrender value of a policy is the valuation to be considered for taxation purposes: Ernest A. Cronin v. Commissioner, 1938, 37 B.T.A. 914;

Mary M. Haines v. Commissioner, 1938, 37 B.T.A. 1013; Charles Lockhart et al., Executor, v. Commissioner, C.C.H. 1938, Par. 7301 B, C.C.H. Dec. No. 10101-B (1938); Madeline D. Powers v. Commissioner, C.C.H. Dec. No. 10, 562-E; '39, Vol. 3, p. 8586 (Jan. 9, 1939) Henry W. Corning v. Commissioner, C.C.H. Dec. No. 10, 551-G; '39, Vol. 3, p. 8576, (Dec. 8, 1938). Opposed to these cases we have Lucas v. Alexander, 279 U.S. 573, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906, where it was necessary for the court to determine the value of a policy on March, 1913, in order to arrive at the taxable gain accruing since that date. The court said, 279 U.S. at page 579, 49 S.Ct. at page 428, 73 L.Ed. 851, 61 A.L.R. 906: "Under the statute, market price of the taxpayers property on that date, where ascertainable, may be resorted to as generally a sufficiently definite and trustworthy gauge of the gain which has later accrued. But, where the property has no market value, the statute must be interpreted in the light of its purpose to ascertain taxable gains accruing since March 1, 1913. Hence, in such a case, its fair value on the critical date is not necessarily what might then have been realized upon it by a forced liquidation by accepting the unfavorable loan or cash surrender value. * * *"

It is my belief that the cash surrender value is not the actual value of a policy but is purely an arbitrary figure fixed by the insurance company. Vance on Insurance on pp. 55, 56 states: "* * * but, inasmuch as insurance companies desire to discourage the surrender of policies so far as they can equitably do so, the surrender value fixed upon a policy is usually set at a considerably lower figure than that which would be established by its reserve value. It seems that, in the absence of a specified promise so to do, the insurer is under no obligation to pay any portion of the reserve value of a policy upon its surrender."

Here the value of the gift made by the plaintiff should not be computed by a portion of its paid-in premiums, as the cash surrender value is determined, but rather by what it would cost to duplicate such a gift as of the date of the assignment.

The cash surrender value is the market value only of a surrendered policy, one in which the investment upon life has been terminated. It is the value of a policy computed by subtracting the insurance already received and other expenses from the

amount of the premiums paid in. It does not place any value upon the investment in the insured's life expectancy.

In the case at bar the donor did not make a gift of paid-in premiums. She made a gift of an investment. The market value of that investment is what it would cost to duplicate the gift upon the day it was made. Had the donor considered she was making a gift of paid-in premiums she could have obviated the necessity of buying the policies and have made a direct transfer of the initial premium to the trust. Or she could have surrendered the policies herself and made a transfer of the cash surrender value. But she did not do this because she believed that she was making a gift of something more. She was giving the sum total of the paid-in premiums, after the insurance received had been deducted, plus an investment in her life expectancy. That additional feature, the investment in her life expectancy, which is not valued in the cash surrender of a policy, must be determined to obtain the true value of this policy. The true value of a life insurance policy still in force can be ascertained only by the cost of duplicating that policy on the date of the gift.

That an insurance policy is worth more than its cash-surrender value is recognized by the bankruptcy courts which allow a bankrupt to keep his policy providing he pays to the trustee the cash-surrender value. If the policy were worth only this surrender value the court would not grant this privilege nor the bankrupt ever avail himself thereof.

The rule is the (same) price that any person of the same age, sex, and condition of health as the insured would have to pay for a similar policy in the same insurance company on the date the gift was made. This is a reasonable standard and one agreed upon by a willing buyer and a willing seller both of whom are acting without compulsion.

■■ The second issue concerns the number of exclusions of $5,000 which should be allowed plaintiff under Sec. 504(b) of the Gift Tax of 1932. That section provides that in cases of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts shall not be included in the total amount of gifts made during such year for the purpose of determining the net gifts.

On December 26, 1934, plaintiff assigned policy C to Donald McKay Frost and Mary Ryerson Frost, trustees under an indenture of trust dated October 31, 1933. Section 1 of that indenture provides that the trustees shall pay one-fourth of the income of the trust to Mary Ryerson Frost during her life and accumulate the balance. Section 2 provides that the trustees, upon receipt of a request signed by Donald McKay Frost and Mary Ryerson Frost, shall distribute and pay over the principal of the trust to said Donald McKay Frost and Mary Ryerson Frost or their issue as shall be specified in said request. Plaintiff argues that two beneficiaries have present vested interests and are in substance absolute owners of the property, and that, accordingly, $5,000 for each of them should be excluded from this gift. The Commissioner allowed but one exclusion.

Plaintiff assigned policy D to Joseph Ryerson and Edward Ryerson, trustees under an indenture of trust dated November 15, 1934. This is a trust of life insurance policies which provides for certain distributions upon the death of the grantor in the following manner: if Isobelle McGenniss Ryerson, one of the beneficiaries, (one) survives the grantor the trustees are to divide the trust estate into two portions, one portion comprising two-thirds in value of the trust estate, and the other portion one-third. Isobelle McGenniss Ryerson is then to receive the income upon one-third the estate for her life with remainder over to certain heirs. Two-thirds of the estate, or all of the estate, if Isobelle McGenniss Ryerson does not survive the grantor, is to be delivered to the descendants of grantor's son Donald Mitchell Ryerson, who shall survive the grantor.

It is stipulated that Donald Mitchell Ryerson died prior to the assignment in question, leaving as his sole descendants Joan and Anthony Ryerson.

Under the first assignment two exclusions should have been allowed. The power of control over the property which the trustees could exercise in their own favor is a present interest in the property. The government's contention that Donald McKay Frost and Mary Ryerson Frost are not the donees of the gift because neither has individual control over the property but must act jointly with the other is without merit for under such reasoning a gift of a bank deposit, payable jointly to both of two persons (and not either) would be a gift to

no one since neither had complete individual control. Yet it could not be contended that the bank was the donee.

Under the second assignment all three beneficiaries have present interests and therefore three exclusions should have been allowed. It is contended that in both the first and second assignment the trust and not the beneficiaries were the donees for the purpose of exclusions. But it is the donative intent and effect that indicates the actual donees. The intent was to confer a benefit upon the beneficiaries and not upon the trust. The transfer of mere legal title is not a transfer of anything valuable. Conceding that there is a transfer of legal interest to the trustees, still there is a simultaneous gift of an equitable interest to each beneficiary and it is the equitable transfer that should be taxable since it is the only one by which the donor has parted with, or the donee received, anything of value.

The case of Davidson v. Welch, D.C., 1938, 22 F.Supp. 726, affirmed by the Circuit Court of Appeals under the name of Welch v. Davidson, 1 Cir., 102 F.2d 100, 102, on March 2, 1939 (C.C.H. Fed. Tax Service Par. 9360), has reviewed the series of decisions indicating that the trust and not the beneficiaries are the donees. On facts similar to the case at bar the court held that the beneficiaries had present and not future interests and that the beneficiaries and not the trust were the donees. The court thereupon allowed an exclusion for each of seven beneficiaries. In affirming the district court the circuit court of appeals said: "The statute of 1932, like that of 1924, was 'not aimed at every transfer of legal title without consideration.' It was aimed at transfers that 'had come to be identified more nearly with a change of economic benefits than with technicalities of title', at, 'transfers of the title that have the quality of a gift.' Surely transfer of title to the trustee did not partake of the quality of a gift. The trustee was not the object of the plaintiff's bounty. The transfer to it of the bare legal title effected 'no change of economic benefits' in its behalf. The beneficiaries are the donees."

I find and rule therefore that the policies are to be valued in accordance with this opinion and that two exclusions of $5,000 each should be allowed in regard to the assignment of policy C and three exclusions in regard to the assignment of policy D.

## On Rehearing.

In recent communications from plaintiff, the court is asked to reconsider its decision in the above entitled cause handed down on March 31st, 1939, wherein it was held, among other things, that the value for gift tax purposes of an assigned insurance policy is not the cash surrender value, but is the amount it would cost to procure a similar policy from the same insurance company on the date of the gift. Suggested findings of fact and conclusions of law have been presented to the court, but judgment has not as yet been entered.

Plaintiff bases her request for reconsideration upon the fact that at the time the gift was made there was in effect a Treasury Regulation which explicitly stated that the value of an insurance policy for gift tax purposes is its cash surrender value. Article 2 (5) Treasury Regulation 79. Plaintiff also cites two recent cases, both holding that under Article 2 (5) of Treasury Regulation 79 an irrevocable assignment of a life insurance policy constitutes a gift in the amount of its net cash surrender value. Blaffer v. Commissioner, 5 Cir., 103 F.2d 489, decided April 26th, 1939; Commissioner v. Haines, 3 Cir., 104 F.2d 854, decided June 14th, 1939.

The decision of March 31st, 1939, in the instant case was based solely upon my construction of Sec. 506 of the Revenue Act of 1932, 26 U.S.C.A. § 555, which provides that "if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

Treasury Regulation 79 is now for the first time called to my attention and only Article 2(5) is quoted. However, in considering the request for a reconsideration of my former holding, I have read Treasury Regulation 79 in its entirety. In neither of the above cited cases does it appear that the courts had this regulation before them in its entirety.

Article 1 of the Regulation deals with the imposition of the tax.

Article 2 (a portion of which is here involved) reads as follows:

"Transfers Reached: The statute imposes a tax whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. Thus, for example, a taxable transfer may be effected by the declaration of a trust, the forgiving of a debt, the assignment of a judgment,

the assignment of the benefits of a contract of insurance, or the transfer of cash, certificates of deposit, or Federal, State or Municipal bonds. Inasmuch as the tax also applies to gifts indirectly made, all transactions whereby property or property rights or interests are donatively passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. *In the following examples of transactions resulting in taxable gifts* it will be understood that the transactions occurred after the date of the enactment of the statute * * * and were not for an adequate and full consideration in money or money's worth:

"(1) The transfer of property by a corporation without an adequate and full consideration in money or money's worth to B *is a gift* from the stockholders of the corporation to B.

"(2) The transfer of property to B where there is imposed upon B an obligation of paying a commensurate annuity to C *is a gift* to C.

"(3) The payment of money or the transfer of property to B in consideration whereof B is to render a service to C, *is a gift* to C or to both B and C, depending on whether the service to be rendered by B to C is or is not an adequate and full consideration in money or money's worth for that which is received by B.

"(4) Where A creates a joint bank account for himself and B *there is a gift* to B when he draws upon the account for his own benefit to the amount drawn.

"(5) The irrevocable assignment of a life insurance policy, or the naming of the beneficiary of a policy without retaining any of the legal incidents of ownership therein, *constitutes a gift* in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift.

"(6) Where premiums on a life insurance policy are paid by an insured who has none of the legal incidents of ownership in the policy, and the beneficiary is other than the insured's estate, each premium payment *is a gift* in the amount thereof.

"(7) Where A purchases property and has the title thereto conveyed to himself and wife as tenants by the entirety, *there is a gift* to the wife in the amount of the value of her interest in the property determined in accordance with the law governing the rights of the tenants, the probability of survivorship being determined by tables of mortality."

It seems to me from a consideration of the title and the text of Article 2 that its sole purpose is to define and give examples of what are taxable gifts. In each subdivision, the subject is followed by the words *"is a gift"* or *"there is a gift,"* or *"constitutes a gift"*, the intent thereof not being to fix the value of the gifts, because that is done by Article 19 of the Regulation, which is entitled: *"Valuation of property"* and wherein the value of the various types of property is set out. Nowhere, however, in that section is any rule laid down as to how to arrive at the value of an irrevocable assignment of a life insurance policy, for tax purposes. Subdivision 6 of Article 19 reads: "Intangibles: *Intangibles not specifically mentioned in this article should be valued in accordance with the rule laid down in subdivision (1) of this article."*

Subdivision (1) of Article 19 reads: "General. The statute provides that *if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.* The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. Where property is sold within a reasonable period after the date of the gift, and it is shown that the selling price reflects the fair market value thereof as of the date of the gift, the selling price will be accepted as the amount of the gift. All relevent facts and elements of value should be considered in every case."

 The rules of statutory construction require that in construing Treasury Regulations, that the same intent be given to them that the Treasury Department itself intended they should have. In arriving at this intent the court must take into consideration the entire regulation. Article 2 is entitled "Transfers Reached", and first defines four types of gifts or transfers, followed by the words *"Thus for example, a taxable transfer may be effected by the declaration of a trust,"* etc., and again, *"In the following examples of transactions resulting in taxable gifts"* etc., setting out seven examples, the fifth example being the one here involved. I am of the opinion that the words used in Example 5 cannot be construed as intending to fix the value of an irrevocably assigned insurance policy for taxable purposes, because that would not

be in accord with the title of Article 2 which covers "Transfers Reached," and would also be in conflict with Article 19 of the Regulation which is entitled "Valuation of Property" and logically should govern all questions as to value. Article 2 seems to me as intended to describe every type of transfer and gift upon which a tax might be imposed, and to set out examples of such transfers and gifts.

The Revenue law of 1924, 43 Stat. 313, contained the first gift tax provision, which was repealed in 1926. Six years later, in the Revenue Act of 1932, a tax was again placed on gifts. 47 Stat. 248, 26 U.S.C.A. § 555. Under Section 506 thereof it was provided that "if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Treasury Regulation 79 (containing Article 2 (5) as set out above) was issued in 1932. Section 506 was re-enacted in the Revenue Acts of 1934, 1935 and 1936, and Article 2 (5) of the Treasury Regulation remained the same in 1934 and 1935. However, in 1936 the Regulation was changed by Article 19 (9) which provided that the value of the gift was not "the cash surrender value of the policy, but the cost of the contract."

In arriving at my original decision I construed Section 506 only, Regulation 79 not having then been called to my attention, and now after a careful consideration of Regulation 79 in its entirety, I see no reason for reversing my decision of March 31st, 1939.