## GUGGENHEIM v. RASQUIN, Collector of Internal Revenue.

### Civ. No. 57.

District Court, E. D. New York.

July 5, 1939.

Paul B. Barringer, Jr., of New York City (John G. Jackson, Jr., of New York City, of counsel), for plaintiff.

Vine H. Smith, U. S. Atty., of Brooklyn, N. Y. (William S. Perlman, Asst. U. S. Atty., of Brooklyn, N. Y.), for defendant.

GALSTON, District Judge.

The plaintiff moves upon the pleadings in the action and on a stipulation of facts for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The action is one for the recovery of a federal gift tax assessment for the calendar year 1934. On or about March 15, 1935 the plaintiff filed with the Collector of Internal Revenue a federal gift tax return and paid a tax in the amount of $52,872.93. In this return there were reported gifts of nine single premium life insurance policies; two of them to M. Robert Guggenheim, having a combined cash surrender value on the date of the gift of $155,915.09; four to Gladys C. Straus, having a combined cash surrender value on the date of the gift of $251,012.26; and three to Harry G. Guggenheim, having a cash surrender value on the date of the gift of $310,417.46.

The complaint alleges that the Commissioner of Internal Revenue determined that the aforesaid policies should have been valued not on their cash surrender value on the date of the gift but on the basis of their cost to the plaintiff. Accordingly he ruled that the values of the policies respectively were $189,901.70, $295,412.30 and $367,124.57, and assessed a deficiency against the plaintiff in the sum of $13,804.69, together with interest thereon in the amount of $1,450.05. These amounts were paid by the plaintiff to the defendant on or about January 25, 1937.

The plaintiff on or about June 30, 1938 filed a claim for refund for these payments, which claim was rejected on October 6, 1938. Plaintiff alleges that the true market value of the policies, when they were irrevocably assigned to the donees, was their cash surrender value.

The answer in effect admits all of the foregoing allegations of the complaint and raises no issue of fact; but alleges that the Commissioner correctly determined the amount of the gifts to be the cost to plaintiff of the contracts of insurance, and denies that the best evidence of the market value is their cash surrender value.

The question is then purely one of law, as to whether the tax should be based on the cash surrender value of the policies or the cost to the plaintiff.

The Revenue Act of 1934 enacted on May 10, 1934, 48 Stat. 680, determines the rights of the parties. It appears that in that act there was no alteration of Sec. 506 of the Revenue Act of 1932, 26 U.S.C.A. § 555. That act provided: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

That language is sufficiently clear and apparently is in no sense ambiguous or difficult to interpret. Nevertheless, because doubtless of its general terms, the Commissioner of Internal Revenue on October 30, 1933 set forth the following regulation, Article 2(5) of Regulation 79: "5. The irrevocable assignment of a life insurance policy, or the naming of the beneficiary of a policy without retaining any of the legal incidents of ownership therein, constitutes a gift in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift."

It must be presumed that when Congress re-enacted in 1934 Sec. 506 of the Revenue Act of 1932, it had knowledge of the foregoing regulation promulgated by the Treasury Department and approved it. McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183; National Lead Co. v. U. S., 252 U.S. 140 at page 146, 40 S.Ct. 237, 64 L.Ed. 496.

The plaintiff, in accordance with the foregoing provision of the law and regulation of the Commissioner of Internal Revenue, paid her gift tax as shown by her 1934 gift tax return.

It appears that the Revenue Act of 1935, 49 Stat. 1014, made no changes in Sec. 506 of the Revenue Act of 1932. Nevertheless on February 26, 1936 the departmental regulations were changed, and Article 19(9) of Regulation 79 provided:

"(9) The values of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. * * *

"Example: A donor owning a life insurance policy on which no further payments are to be made to the company (e.g., a single premium policy or paid up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured."

It is to be noted that this rule defines the value of a life insurance contract to be the amount paid to the company for the insurance, which is, of course, quite different from the regulation of the Treasury Department of October 30, 1933, which set forth the surrender value of such policy as the true measure of value.

To apply the 1936 regulation retroactively, if indeed it can be applied even prospectively with validity, is attended with much difficulty. It is, of course, conceivable that a regulation promulgated by an executive branch of the Government may require correction, but where the Department has acted for years under an expressed interpretation and Congress implicitly has accepted such interpretation through re-enactment of the same statute, the new interpretation should not without a showing of Congressional authority have a retroactive effect. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S. Ct. 423, 83 L.Ed. 536.

In McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 512, 75 L. Ed. 1183, it was said: "The re-enactment of the statute by Congress, as well as the failure to amend it in the face of the consistent administrative construction, is at least persuasive of a legislative recognition and approval of the statute as construed."

Nor can the view be ignored that where administrative boards or executive departments are empowered to prescribe regulatory provisions affecting a Congressional statute, such regulations have the full force and effect of law, if encompassed within the scope of the statute. So that it must follow that when the plaintiff in 1934 acted within the provisions of the Treasury regulations effective at that time, she was acting within the law. Application of the 1936 regulation would in effect attempt to destroy the legality of the plaintiff's act without warrant of law.

In facts substantially similar to those presented on the pleadings herein, the question was re-examined in Commissioner v. Mary H. Haines, by the Circuit Court of Appeals for the Third Circuit, 104 F.2d 854, and with reliance on Helvering v. R. J. Reynolds Tobacco Co., supra, that court held that the tax must be assessed on the cash surrender value of the policies at the time the gift was made in accordance with the regulations then in force.

The motion for judgment on the pleadings is opposed and it is contended in the brief, as it was at the argument, that the stipulation of facts filed in the cause was executed by the Government not for submission on this motion, but for use at the trial. Strictly speaking, of course, the stipulation may not be considered on a motion for judgment on the pleadings and the technical position taken by the Government must be sustained. So the motion will be considered only on the pleadings. The motion is, moreover, resisted because it is asserted that the Government intends to prove at the trial (1) that the plaintiff applied for and obtained each of these policies for the purpose of making gifts of the policies; (2) that the amount of prospective dividends on eight of the nine policies and the actual reserve on these policies were in excess of the cash surrender value.

But both of these matters may be admitted for the sake of the argument, without impairing the full force and effect of plaintiff's contention that under existing law, at the time that the gifts were made, the cash surrender value was the determinant of the value of the gift.

It is inconceivable how any evidence that the defendant may seek to adduce, as suggested in its brief, bearing upon the age of the plaintiff—it is said she was seventy-one years of age when the policies were applied for—can in any way effect this result. Certainly her age is not a factor that enters into the question of whether the gift tax should be based on the surrender value of the policy or the premium that she paid. Likewise the suggestion that the defendant is seeking an investigation concerning the reserves set up by insurance companies in the determination of the cash surrender value of policies is likewise immaterial. Judicial notice may well be taken that cash surrender values as determined by insurance companies are based upon strict actuarial computations; and there is no suggestion that in the open market a buyer could be found who would pay a greater sum for the policies than that which the insurance actuaries determine to be their cash surrender values. Certainly defendant's investigation into the accuracy of such calculations cannot compel a finding that the insurance companies should pay a greater cash surrender value than they stipulate to pay in the contracts of insurance.

Accordingly the plaintiff's motion for judgment on the pleadings is granted.