### HELVERING, Com'r of Internal Revenue, v. BRYAN.
#### No. 4582.

Circuit Court of Appeals, Fourth Circuit.
Jan. 31, 1940.

John J. Pringle, Jr., Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

R. E. Cabell, of Richmond, Va., for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Gift taxes on the value of twenty-four life insurance policies issued on the life of the taxpayer and included in gifts made by him during the calendar year 1935, are the subject of this review. The taxpayer reported a valuation of $38,873.94, based on the net cash surrender value of the policies on the date of gift, and the Board of Tax Appeals approved the valuation. The Commissioner of Internal Revenue proposed a valuation of $49,658.69, which would have required an additional tax of $956.56. The case was submitted to the Board of Tax Appeals upon the following stipulation of facts:

"The taxpayer reported each of the twenty-four policies of insurance included in his gifts as having its respective net cash surrender value on the date of the gift thereof. The deficiency proposed results from the use as the value of each of said policy contracts, the respective amounts which the insuring company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured as of the date of the gift in those cases in which the policy was a single premium or paid-up policy, and, in those cases in which further premium payments were to be made, the value of each is computed by adding to the interpolated term reserve at the date of the gift the proportionate part of the gross premium last paid before the date of the gift which covers the period extending beyond that date.

\* \* \*

"The earnings of the company issuing the participating policies were apportioned to the policies and were reflected in the computation of the cash surrender values made by the taxpayer. None of the policies involved in this proceeding had any tontine feature giving to any of the policies a deferred value not represented in the cash surrender value. There are no terms or conditions stated in any of the policies which give to such policy any greater or less actual value than its net cash surrender value. With respect to each and every one of the policies involved in this proceeding, the cost of a similar new policy might have been more or less at the date of the gift of the policy in question dependent on a number of factors, e. g., premium rates might increase or decrease from year to year without affecting the value of a then existing policy; also the age and physical condition of the insured are material factors determining whether or not any new policy could be purchased and, if so, what would be the cost of such a policy.

"The sole question submitted to the Board for determination is whether the computation of value of these twenty-four policies proposed to be made by the Commissioner on the basis of the single premium payment for a similar policy on the life of the taxpayer as of the date of the gift of such policy in those cases in which the policies were fully paid up, or computed on the interpolated reserve method in those cases in which additional premiums were still· required to be paid, is correct, or whether, under the facts, the net cash surrender value was properly used by the taxpayer."

§ 506 of the Revenue Act of 1932, Ch. 209, 47 Stat. 169, 248, 26 U.S.C.A. § 555, is as follows: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

Treasury Regulations 79, Article 2 (5), promulgated in 1933 under the Revenue Act of 1932, which were in effect at the time of the gifts, read as follows: "The irrevocable assignment of a life insurance policy, or the naming of the beneficiary of a policy without retaining any of the legal incidents of ownership therein, constitutes a gift in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift."

These regulations were changed in 1936, and under Article 19, which stated the general rule for the valuation of property to be the price at which it should change hands between a willing buyer and a willing seller, the following example was given: "A donor owning a life insurance policy on which no further payments are to be made to the company (e.g., a single premium policy or paid-up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured."

It is the contention of the Commissioner that the valuation of the policies in this case should be made in accordance with the 1936 edition of the Regulations, although it was not promulgated until after the gifts under consideration had taken place. · The decisions of the Board of Tax Appeals and of the courts, with the exception of Ryerson v. United States, D.C., 28 F.Supp. 265, now pending in the Circuit Court of Appeals for the Seventh Circuit, have been against the government's contention. The following statement appears in the government's brief in this court:

"The decisions of the Board of Tax Appeals on this question have been consistently against the Government. [2]

"In Commissioner v. Haines [3 Cir.], 104 F.2d 854; Helvering v. Cronin [8 Cir.], 106 F.2d 907; and Guggenheim v. Rasquin, 28 F.Supp. 322 D.C. E.D. N.Y., the same issue involved herein was decided against the Government. The basis of the three adverse decisions is briefly this: That Article 2 (5) of Treasury Regulations 79 (1933 Ed.) states that the cash surrender value of a policy is the value for gift tax purposes; that this ruling has been changed by Article 19 (9) of Treasury Regulations 79 (1936 Ed.); and that the subsequent regulations can have no application with respect to the tax liability for the years prior to their promulgation, citing Helvering v. R. J. Reynolds Tobacco Co., ·306 U.S. 110 [59 S.Ct. 423, 83 L.Ed. 536].

"[2] Cronin v. Commissioner, 37 B.T.A. 914; Haines v. Commissioner, 37 B.T.A. 1013; Kirk v. Commissioner, 39 B.T.A. 902. In addition to these, there are a number of unreported memorandum opinions. Powers v. Commissioner, decided January 9, 1939, pending in the Circuit Court of Appeals for the First Circuit; Corning v. Commissioner, decided December 8, 1938, pending in the Circuit Court of Appeals for the Sixth Circuit; Wood v. Commissioner, decided November 14, 1939, pending in the Circuit Court of Appeals for the Seventh Circuit.

"See also Blaffer v. Commissioner, 5 Cir., 103.F.2d 489, certiorari denied, October 9, 1939, 60 S.Ct. 91, 84 L.Ed. ——; and Farish v. Commissioner, 5 Cir., 103 F.2d 1011, certiorari denied, October 9, 1939, 60 S.Ct. 92, 84 L.Ed. ——. The court assumed that the value of life insurance policies was the cash surrender value, relying on the 1933 edition of Treasury Regulations 79. However, no issue was made of this question in these cases."

We are in accord with these decisions, and the order of the Board will be affirmed.