## GUGGENHEIM v. RASQUIN, Collector of Internal Revenue.

### No. 217.

Circuit Court of Appeals, Second Circuit.

March 18, 1940.

372

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., for appellant.

Paul B. Barringer, Jr., of New York City (John G. Jackson, Jr., of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The plaintiff in December 1934 took out nine life insurance policies on the single premium basis, that is to say, with the premium paid in advance in a lump sum. The policies were payable to her estate. At the time of taking them out, and as to some of the policies prior to formal issuance, the plaintiff assigned them to three children by gift. The policies insured the plaintiff's life for $1,000,000, and the cost to the plaintiff was $852,438.50, fully paid at the time of issuance. She made a return for gift tax, listing the policies at a value of $717,344.81, said to represent their cash surrender value immediately after issuance, and paid gift tax on the basis that she had made gifts of that value. The Commissioner of Internal Revenue determined that the value of the gifts was the cost of the policies to the plaintiff, $852,438.50, and assessed a tax deficiency of $13,804.69. The plaintiff paid the amount demanded and after denial of claim for refund brought action against the collector to recover the additional tax paid.

The facts were covered in the pleadings and in a stipulation. The district judge granted the plaintiff's motion for judgment on the pleadings and entered judgment for the plaintiff. He held that the value of the gifts was the cash surrender value of the policies immediately after issuance. As to cash surrender value, it appears from the terms of the policies that they may be realized on after the first policy year. The plaintiff alleged, however, that cash surrender values at the time of the gifts were furnished her by the insurance companies at the amounts specified in her return, $717,344.81, and the defendant did not take issue with the allegation that the cash surrender values totalled $717,344.81.

▮ Where a donor takes out life insurance on payment of single premium and at the same time makes an irrevocable gift of the policy to a donee, which amount should be taken as the value for gift tax, the cost to the donor or the cash surrender value of the policy in the hands of the donee immediately after issuance? The difference is considerable, over $135,000 in the instant case. We are of opinion that the value for gift tax is the cost of the policy to the donor.

Under the Revenue Act of 1932, the gift tax is imposed on the donor. If the gift is in property, "the value thereof at the date of the gift shall be considered the amount of the gift". Section 506, 26 U.S.C.A. Int.Rev.Code, § 1005. When the property given is a life insurance policy, the value is the amount that it would cost to duplicate the policy at the time of the gift. That is the value commonly recognized by the courts in actions for conversion of a policy, in actions for breach of contract to issue a paid-up policy, and in allowing claims against insolvent life insurance companies. Sedgwick on Damages, section 730; Sutherland on Damages, section 838; New York Life Ins. Co. v. Statham, 93 U.S. 24, 23 L.Ed. 789; Bass v. Life & Annuity Ass'n, 96 Kan. 205, 150 P. 588; Ebert v. Mutual Reserve Fund Life Ass'n, 81 Minn. 116, 83 N.W. 506, 834, 84 N.W. 457; People v. Security Life Ins. Co., 78 N.Y. 114, 34 Am.Rep. 522; Toplitz v. Bauer, 161 N.Y. 325, 55 N.E. 1059; Speer v. Phœnix Mu-

tual Life Ins. Co., 36 Hun 322; Universal Life Ins. Co. v. Binford, 76 Va. 103; Bell's Case, L.R. 9 Eq.Cas. 705; In re English Assurance Co., L.R. 14 Eq.Cas. 72. It is true that the cost of a similar policy does not meet all cases, as where the insured has become uninsurable at the time as of which the value of the policy is to be determined. But it is generally a more accurate measure of value than the amount of money allowed by the company for surrender of the policy. Toplitz v. Bauer, supra; Speer v. Phœnix Mutual Life Ins. Co., supra; In re English Assurance Co., supra. And in a case like the present one, where the policy is given away at the time it is taken out, there is no uncertainty as to its worth. The worth is established convincingly by what the donor paid for the policy on that very day.

Cash surrender value, on the other hand, is merely the money which the company will pay on surrender of the policy for cancellation. The amount corresponds to the reserve on the policy less a surrender charge. It represents the value only in the event of surrender. With policies on an annual premium basis, it is the general practice not to allow cash surrender value for the first two years. Life Insurance, MacLean, 4th Ed., page 161; Life Insurance, Huebner, page 321. It would hardly be urged, however, that a life insurance policy was worthless until the third year, or that the gift of a policy less than three years old was not subject to gift tax on the ground that the property given had no value. Yet that would be the result if cash surrender value were the determining factor under the gift tax law.

Suppose a case where a parent pays $1,000 for an automobile to be delivered to a son as a gift. The value of the gift is what the donor gave up for it, $1,000, not the smaller amount that the son might be able to induce the dealer to allow him in cash on a surrender of the automobile. We see no difference in principle between that case and a case where the parent takes out a single premium paid-up life insurance policy and gives it to a son forthwith. The value of the gift is what the parent paid for the policy, not what the son might obtain for it by surrendering it to the insurance company. The gift tax, it is to be borne in mind, is imposed on the donor and is measured by the value of the property given by him, not by the value of the property in the hands of the donee. Here the donor's estate was depleted by the amount which she paid for the policies, not by their surrender value.

The taxpayer relies on Article 2 (5) of Treasury Regulations 79, as it read prior to 1936: "The irrevocable assignment of a life insurance policy, or the naming of the beneficiary of a policy without retaining any of the legal incidents of ownership therein, constitutes a gift in the amount of the cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift."

The regulation was evidently designed for a case where a policy was given away some time after issuance. We do not interpret it as intended for a case where a single premium policy is given away simultaneously with issuance. If it was intended to govern such a case, the reference to "prepaid insurance" might well be said to set the value at the amount of the single premium payment, which accords with our views of the value of the gift. As the Supreme Court recently said of another former regulation relative to gift tax, "At most the regulation is ambiguous and without persuasive force in determining the true construction of the statute." Estate of Sanford v. Commissioner, 308 U.S. 39, 49, 60 S.Ct. 51, 58, 84 L.Ed. ——. And in any event, the present case is touched by the next paragraph in the Regulations, Article 2(6): "Where premiums on a life insurance policy are paid by an insured who has none of the legal incidents of ownership in the policy, and the beneficiary is other than the insured's estate, each premium payment is a gift in the amount thereof."

The regulations as they stood in 1935 did not prescribe that cash surrender value be taken as the value of the gift in a case like the present. On the contrary, they were quite as consistent with the view which seems to us the correct one, that where a donor takes out life insurance for the benefit of another irrevocably, the value of the gift is the premium paid by the donor. In 1936 the regulations were changed so as to eliminate any confusion and to provide explicitly that in such an instance the value of the gift is to be measured by the cost of the insurance.

There are cases to the effect that cash surrender value governs for purposes of gift tax in the case of gifts of life insurance policies made prior to 1936. Commissioner v. Haines, 3 Cir., 104 F.2d 854; Helvering v. Cronin, 8 Cir., 106 F.2d 907;

Helvering v. Bryan, 109 F.2d 430, decided January 31, 1940 by the Fourth Circuit. Those cases rest on an interpretation of former Article 2(5) to which we cannot accede. There is a decision the other way in the district court, Ryerson. v. United States, D.C.Ill., 28 F.Supp. 265, with which we are in accord.

The Commissioner assessed the tax on the proper basis, the cost of the policies to the donor at the time of the gift. Judgment should have been entered for the defendant.

Reversed.