## COMMISSIONER OF INTERNAL REVENUE v. POWERS.

### No. 3546.

Circuit Court of Appeals, First Circuit.
July 16, 1940.

Certiorari Granted Nov. 12, 1940.
See 61 S.Ct. 141, 85 L.Ed. ——.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Ralph G. Boyd, of Boston, Mass. (Roger E. Ela, Nutter, McClennen & Fish, and Robert Vance Brown, all of Boston, Mass., on the brief), for Powers.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

SWEENEY, District Judge.

This case is before us on the petition of the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals, entered January 9, 1939, in which

that Board ruled that there was no deficiency in the gift tax paid by the respondent for the year 1935.

In late November and early December, 1935, the respondent Madeleine D. Powers purchased six single premium policies of insurance as follows:

| Company and policy number | Date of issue of policy | Name of insured | Face amount of policy | Amount of single premium paid | Type of policy |
|---|---|---|---|---|---|
| The Fidelity Mutual Life Ins. Co., No. 532838 | 11/25/35 | Madeleine D. Powers | $20,000 | $13,967.40 | Ordinary Life |
| The Prudential Ins. Co. of America, No. 9114410 | 12/ 4/35 | Madeleine D. Powers | 100,000 | 68,779.00 | Ordinary Life |
| The Mutual Life Ins. Co. of N. Y., No. 5090777 | 11/25/35 | Madeleine D. Powers | 40,000 | 27,204.80 | Ordinary Life |
| The Prudential Ins. Co. of America, No. 9114963 | 12/ 5/35 | Madeleine Powers | 122,000 | 99,672.78 | 10-Yr. Endowment |
| The Connecticut Mutual Life Life Ins. Co., No. 887777 | 11/27/35 | Madeleine Powers | 28,000 | 22,671.60 | 10-Yr. Endowment |
| Home Life Ins. Co. No. 435395 | 11/27/35 | Madeleine Powers | 50,000 | 40,854.00 | 10-Yr. Endowment |

In the policies on the life of Madeleine D. Powers, George H. Powers was named as the beneficiary, if living. In the policies on the life of Madeleine Powers, the respondent's daughter, the beneficiary was Madeleine D. Powers, if living; otherwise they were payable to the insured, the estate of the insured or the estate of the respondent. On December 30 and 31, 1935, the respondent made gifts of the policies in the form of irrevocable assignments to the respondent's husband and the Massachusetts Hospital Life Insurance Co., as trustees. At the time of the respective gifts the policies had cash surrender values and reserves carried against them as follows:

cle 2(5) of Treasury Regulations 79, promulgated under the Revenue Act of 1932, as her authority. Article 2(5) reads as follows:

"Transfers Reached: * * * In the following examples of transactions resulting in taxable gifts * * *

"(5) The irrevocable assignment of a life insurance policy, or the naming of the beneficiary of a policy without retaining any of the legal incidents of ownership therein, constitutes a gift in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift."

The Commissioner contends that Article 2(5) is invalid in view of Article 19 of the same Regulations, which reads as follows:

"*Valuation of property.*—(1) *General.*—The statute provides that if the gift is made in property, the value thereof at the

| Company and policy number | Date of gift | Cash surrender value on date of gift | Reserve carried by Ins. Co. at date of gift |
|---|---|---|---|
| The Fidelity Mutual Life Ins. Co., No. 532838 | 12/30/35 | $12,360.00 | $12,672.02 |
| The Prudential Ins. Co. of America, No. 9114410 | 12/30/35 | 56,198.86 | 60,917.84 |
| The Mutual Life Ins. Co. of N. Y. No. 5090777 | 12/30/35 | *23,271.30 | 25,344.05 |
| The Prudential Ins. Co. of America, No. 9114963 | 12/30/35 | 84,067.70 | 89,383.33 |
| The Connecticut Mutual Life Ins. Co., No. 887777 | 12/30/35 | 20,790.73 | 21,126.73 |
| Home Life Ins. Co., No. 435395 | 12/31/35 | 36,671.71 | 37,728.33 |

* Cash surrender value when right to surrender first arose, discounted to date of gift.

The only question in the case is the value of the policies on the date of the transfer to the trustees. The respondent contends that the value of the policies for gift tax purposes was the cash surrender value on the date of the transfer, and points to Arti-

date of the gift shall be considered the amount of the gift. The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. Where the

property is sold within a reasonable period after the date of the gift, and it is shown that the selling price reflects the fair market value thereof as of the date of the gift, the selling price will be accepted as the amount of the gift. All relevant facts and elements of value should be considered in every case."

He argues that Article 19 deals exclusively with the valuation of property, and that any inconsistency between Article 2(5) and Article 19 must be resolved in favor of Article 19. There is an inconsistency between Article 2(5) and Article 19 of Regulations 79, and it seems inevitable that Article 2(5), which was written in under a heading "transfers reached", must give way to Article 19 which is under a heading "valuation of property", unless the word "value" as used in the Act can mean only cash surrender value, and nothing else, as applied to insurance. The language of the Act does not warrant such an interpretation since it deals generally with property, and states that the value of a gift shall be considered to be the amount of the gift. Any attempt on the part of the Commissioner to promulgate a regulation which would establish a different value than that imposed by the Congress in enacting the taxing statute would be invalid. It is to be noted that when Regulations 79 were amended in 1936, Article 2(5) was amended by omitting reference to value, and by stating that the value of insurance policies was covered in Article 19(9). As will appear herein later, we reach the conclusion that insofar as Article 2(5) of Regulations 79 is applicable to single premium life insurance policies it is not consistent with the language of the Act, and would be an arbitrary and unreasonable attempt to set a valuation that is not a true one. See Lynch v. Tilden Produce Co., 265 U.S. 315, 44 S. Ct. 488, 68 L.Ed. 1034; Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977.

Many of the decisions that have held that the cash surrender value of an insurance policy is the true value of a gift of such a policy follow the reasoning in Commissioner v. Haines, 3 Cir., 104 F.2d 854. In that case it was stated that since Article 2(5) of Regulations 79 remained the same throughout 1934 and 1935, and received Congressional approval by the reenactment of Section 506 in the taxing statutes of 1934 and 1935, that Article 2(5) had "the force of law", citing Helvering v. R. J. Reynolds Tobacco Company, 306 U.S.

110, 59 S.Ct. 423, 83 L.Ed. 536. See, also, Helvering v. Cronin, 8 Cir., 106 F.2d 907, and Helvering v. Bryan, 4 Cir., 109 F.2d 430. A close reading of the taxing statutes of 1934 and 1935 does not disclose that Section 506 of the 1932 Act, 26 U.S.C.A. Int.Rev.Code § 1005, was in fact reenacted in either of these years but was left unchanged.

In 1936, Article 19(9) was adopted, which reads as follows:

"(9) *Life insurance and annuity contracts.*—The value of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. As valuation through sale of comparable contracts is not readily ascertainable when the gift is of a contract which has been in force some time and on which further premium payments are to be made, the value may be approximated, unless because of the unusual nature of the contract such approximation is not reasonably close to the full value, by adding to the interpolated terminal reserve at the date of the gift the proportionate part of the gross premium last paid before the date of the gift which covers the period extending beyond that date.

"The examples given below, so far as relating to life insurance contracts, are of gifts of such contracts on which there are no accrued dividends or outstanding indebtedness.

\*       \*       \*       \*       \*       \*

"Example: A donor owning a life insurance policy on which no further payments are to be made to the company (e. g., a single premium policy or paid-up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured."

Since the application of Article 2 (5) of Regulations 79 (1932 Ed.) to these policies would effect a result different than intended by Congress, we must disregard it, and it follows that Article 19 of the 1932 Regulations as amended by Article 19 (9) of the 1936 Regulations must prevail. See Manhattan General Equipment Company v. Commissioner, 297 U.S. 129, 56 S. Ct. 397, 80 L.Ed. 528. It does not seem necessary, however, to turn this case en-

tirely on the construction of any of the Regulations. Section 506 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 248, 26 U.S.C.A., Int.Rev.Code, § 1005, is as follows:

"Sec. 506. *Gifts Made in Property*

"If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

■ In reaching a determination of what the value means as applied to single premium policies, we must bear in mind that we are dealing with a particular type of property which may be subject to somewhat different rules than would apply to most forms of property. The value of a single premium life insurance policy must mean the fair market value, if there is such a value, and, in any instance, must be based upon a consideration of all of the relevant facts and elements.

■ The Board below has found that the cash surrender value of a policy is an arbitrary figure arrived at by the insurer by deducting from the reserve set up under the policy a so-called surrender charge. It is for the purpose of discouraging surrender of the policy that this charge is made. We do not think that the cash surrender value of a policy on any given date is necessarily its real value within the meaning of Section 506. See Lucas v. Alexander, 279 U.S. 573, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906. See, also, Guggenheim v. Rasquin, 2 Cir., 110 F.2d 371. It is unfair to contend that the cash surrender value is the true value of a single premium life insurance policy merely because that happens to be the amount that the insurance company would give to be released from its contract. Such a contention confuses a forced liquidation for an arbitrary figure, with an assumed market in which insurance policies of this type are bought and sold.

In the strict sense of the word, insurance policies once issued and fully paid for are not bought and sold in an open market. At least, there are no published quotations of values of such policies on any given date. It would be much fairer to ask what the insurance company, which is in the business of selling insurance and not buying, would sell a similar contract for on the date of transfer where the conditions of issuance were the same. The fallacy of the proposition that the cash surrender value is the true value of these policies can be demonstrated by recourse to one of them. In policy No. 9114410, the Board found that there was no "absolute obligation to pay the cash surrender value during the first year", but that the Prudential Life Insurance Company "would have granted the discounted value of the first year cash surrender value, as of the date of the gift". If the insurer was under no obligation to pay any cash surrender value during the first year, it could be assumed that it might refuse to discount the value at the end of the first year. This would mean that the policy would have no cash surrender value as of the date of the transfer. Could it be argued successfully that the gift of this policy about a month after its issuance would be the gift of a thing having no value? We do not think so.

■ A single premium insurance policy is unlike most property which is made the subject of a gift, in that it seems to have no depreciation. On the day that these policies were issued their value was the price that was paid for them. Guggenheim v. Rasquin, supra. This is demonstrated by recourse to the familiar rule for determining fair market value, namely, what a willing buyer would pay to a willing seller for an article where neither is acting under compulsion. If the value of the policies on the date of issuance was the cost, what has happened to decrease that value? To effect a decrease there must be some intervening factor or element which would have a direct relation to its value. In many types of insurance the uncertainty of the ability to pay further premiums may affect that value, but in the instant case all premiums have been paid. Nothing but the passage of time is needed to increase their value to the higher face value of the policies. Certainly there has been no decrease in the value of the policies. In other words, the value of these policies, starting out on the dates of issue, as equivalent to their cost, can only increase as time passes.

■ It is a well-recognized fact that the cost of insurance increases with the age of the insured. This undoubtedly is because as an insured grows older his life expectancy is shorter, and the ability of the company to earn sufficient on the reserve to pay the face of the policy at its contemplated maturity is more limited. While premiums are usually recomputed only every six months, nevertheless, actuarial tables, it is presumed, could show an actual daily increase in the hazard. The Board below found that the reserves set up under policy No. 9114410 increased from $60,833 to $60,917.84 during the twenty-six days be-

tween the date of issuance and the date of transfer of that policy. This was undoubt-edly brought about either through its earn-ings or through reallocation of reserves. These facts are inconsistent with a decrease in the value of a single premium policy after its date of issue, and since, in our opinion, the court in Guggenheim v. Rasquin, su-pra, correctly held the value of a policy at the date of issue to be the cost of the poli-cy and not its surrender value, it neces-sarily follows that the true value of a poli-cy transferred shortly after the date of is-sue would be the cost of a similar policy on that date, and not its lower cash surrender value, which the taxpayer claims to be the proper measure of value.

We therefore reject the theory that the cash surrender value of the policies, or even the reserves of the policies, was the test of their value on the date of transfer, and think that the Commissioner assessed the tax on the minimum proper basis, namely, the cost of the policies to the donor.

The decision of the Board of Tax Ap-peals is reversed, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.

MAGRUDER, Circuit Judge (concur-ring).

The statute does not define "value", but merely provides that if the gift is made in property "the value thereof at the date of the gift shall be considered the amount of the gift". It is not clear to me that the cash surrender value test stated in Article 2 (5) of Regulations 79 (1932 Ed.) is invalid as in conflict with the statute. Nor is it clear to me that the specific provision in Article 2(5) (1932 Ed.) dealing with this particular species of property is incon-sistent with the general provisions of Arti-cle 19(1) of the same edition of the Regu-lations. But the provisions of the 1932 edition of the Regulations, as applied to gifts of insurance policies, were at best un-clear and confusing (see Guggenheim v. Rasquin, 2 Cir., 110 F.2d 371, 373), and the Commissioner quite properly clarified the Regulations in the 1936 edition. The Com-missioner's regulations are merely persua-sive guides for the courts in interpreting the revenue acts and, at least in the absence of an intervening reenactment by Congress (Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536), the courts are free to adopt and apply retroactively a later regulation clarifying

and modifying an earlier interpretation. In this case the regulation as amended in 1936 certainly gives a permissible interpre-tation of the act. Indeed, having in view the peculiar nature of single premium life insurance policies as "property", I think the later interpretation is the more reasonable one, as the opinion of the court demon-strates.