Samuel C. Coleman, J.
The plaintiff bank sues the defendant on a note; as to that there is no defense.
There is a counterclaim by the defendant based upon the bank’s alleged improper surrender of a life insurance policy on the defendant’s life which the bank was holding as collateral security to a loan (not the loan represented by the note upon which the plaintiff sues). As to the counterclaim, a detailed statement is necessary.
In December, 1947, the defendant gave his note to the bank in the sum of $9,300. This, apparently, was not a new loan but was a consolidation of outstanding loans. The note was payable on demand, interest to be paid quarterly at the rate of 3per annum. To secure the note, the defendant assigned to the bank four life insurance policies, one of which is in question here. The assignment, among other things, empowered the bank to surrender the policy and obtain its cash surrender value if the defendant failed to meet his obligations under the note or defaulted in the payment of premium. But this power was limited by the following language: “That the Assignee will not exercise * * # the right to surrender the policy * * * until there has been default in any of the Liabilities or failure to pay any premium when due, nor until 20 days after the Assignee shall have mailed, by first class mail, to the undersigned at the address last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right ’ ’. The policy was surrendered by the bank when, after the defendant’s failure to pay a premium, the policy, by its provisions, had been converted into an extended term insurance. It is the defendant’s contention that he failed to receive proper notice of the bank’s intention to surrender. Here a detailed chronology is necessary.
On August 17, 1948 the bank wrote the defendant that “ this [the letter] is to be considered notice of our intention to sur *720 render your policies to the issuing companies unless the matter of your interest default is corrected. I hope it will not be necessary for me to follow this procedure.” One of the policies was surrendered on October 29, 1948 and it is this letter upon which the bank relies as to the giving of notice under its assignment. On the date of the letter, the bank says, the plaintiff was in default in the payment of interest of $150. This is denied by the defendant, and I shall take up the details of this question later. In any case, none of the four policies was presented to the respective insurance companies for surrender for nonpayment of interest on the loan, and apparently, nothing was done by either side until October 18, when the bank wrote the plaintiff enclosing a form of the note upon which it is now suing, and stating that ‘ ‘ a bill covering the accrued interest on your past due note to October 15, 1948 will be sent you separately.” On October 21, a bill was sent, stating that interest “ amounting to $28.50 on your demand collateral loan will be due and payable at this office,” on a date left blank. The same day the defendant received notice from the Mutual Life Insurance Company that his policy in that company had lapsed for nonpayment of premium (due in April, time of payment extended to July 1) and that the cash value had been applied to the purchase of paid-up term insurance for a period of over 15 years. The insurance company also stated that it was ready to consider the question of reinstatement. The bank, undoubtedly, received a copy of Mutual’s letter, although none is before me, for after that date Mr. Bindlaub, vice-president of the bank, with whom the defendant had had his dealings, telephoned him about it. There is a difference between the two as to what occurred, but certain facts do stand out clearly enough. The defendant, apparently, was quite content to have his policy remain in effect as a paid-up extended term policy for more than 15 years, as at the time he was 60 years old. And it was his belief that such a policy would amply protect the bank. Mr. Bindlaub, however, took the position firmly that the bank could not hold the policy in that form as collateral and informed the plaintiff that he was surrendering the policy without delay for its cash value. He hoped that the defendant would take up with the insurance company the matter of reinstatement, but he promised no delays in his surrendering of the policy. It is significant that neither one mentioned the matter of overdue interest; nor was there any reference to the letter of August 17. Mr. Bindlaub’s position was stated in his letter of October 28 wherein he informed the plaintiff that to protect the bank’s interest he had forwarded the policy to the insurance company *721 for surrender. In the same letter he again expressed the hope that by November 1 the defendant would take care of the overdue interest. On November 12, Mr. Eindlaub wrote the defendant that he had received the check from the insurance company and had applied it against the demand loan, and he asked the plaintiff to take up ‘ ‘ the past due demand loan interest. ’ ’ He added that he would prefer not to be put “ in the position of forcing us to surrender the New York Life Insurance policies.”
The bank’s position is that the letter of August 17, which was more than 20 days before the actual surrender of the policies, complied with the notice it was required to give, and that its action on October 28 in surrendering the policy was Avithin its poAver. The plaintiff, on the other hand, contends that no interest Avas due on August 17, that the policy was surrendered, not for nonpayment of interest, but for nonpayment of premium, and that he received no notice at all, except over the telephone, that the policy AATas to be surrendered on that ground.
As to whether interest Avas in fact due is not at all clear. I haA^e said that Mr. Eindlaub testified that in August interest of $150 Avas due. Plaintiff denies that he Avas in arrears of interest, and there were no records of the bank to sIioav the interest charges. But the interest matter probably Avas cleared up, for in the letter of October 18, the bank stated that a bill for accrued interest to October 15 Avould be sent, and the memorandum Avhich the bank sent a feAv days thereafter gave the amount of interest as $28.50 (the date AATlien this amount was due was not inserted in the memorandum, but the note can only refer to the letter of October 18 which mentioned interest to October 15). If, therefore, interest Avas taken care of to October 15, the letter of August 17 cannot, of course, be considered any notice within the terms of the assignment of the policies.
Yet if there is any doubt about the matter of interest, that doubt, it seems to me, ought to be resolved against the bank. The bank could not presume to dispose of the defendant’s interest in his life insurance policy unless there Avas in fact a default in the payment of interest, and the burden, it seems to me, should be upon the bank to establish that there avus such a default. ‘£ After all, [the bank as pledgee of a life insurance policy] * * * is a form of fiduciary and [its] conduct must stand the
scrutiny of a court of equity ” (Gins v. Matter Plumbers Supply Co., 148 F. 2d 974, 979 [Clabk, C. J.]); and before it can avail itself of the rather drastic right of destroying an insured’s equity in a policy of many years standing, it ought to shoAv that it has complied Avith every condition precedent to such action.
*722 But if we assume that interest was still due or at least that the burden of establishing that no interest was due was upon the defendant, it seems to me, nevertheless, that the bank’s conduct was improper. If interest were due, the bank would, of course, have. the power to surrender the policy upon proper notice. But by its conduct it could lead the defendant to believe that it was not standing upon its power; that because of the lapse of time, its failure to refer to the matter of interest as a ground of forfeiture, its continued request for the payment of interest, it was receding from its previously declared intention of surrendering the policies on that ground; all of them, it should be noted. If that were the case here, the bank could not foreclose the defendant’s equity suddenly and without giving him time to pay the interest. Yet that was precisely the situation here. The bank’s conduct, its correspondence, the conferences between Mr. Bindlaub and the defendant all lead to the conclusion that the bank was foregoing its right to surrender for nonpayment of interest. The bank may not have been foreclosed from again asserting its power in this respect, but it did give the defendant justifiable grounds for believing that for the time being, at least, there would be no surrender for nonpayment of interest. If it were intending to proceed on that basis, it would have to give notice again. Its conduct cannot be ignored to the prejudice of the defendant (Small v. Housman, 208 N. Y. 115, 126; Furber v. National Metal Co., 118 App. Div. 263, affd. 193 N. Y. 622; Bailey v. American Deposit & Loan Co., 52 App. Div. 402, affd. 165 N. Y. 672; Toplitz v. Bauer, 161 N. Y. 325). There should also be added that the other three policies, all fully paid up, were for much smaller amounts than the Mutual policy and by surrendering any one of them the bank would have obtained more than the maximum amount of interest it says was due. If, then, the bank wished to surrender any one specific policy for nonpayment of premium, it was its duty to give proper notice of its intention to do so; an earlier notice to surrender generally for nonpayment of interest, the effect of which had lapsed, could not avail as retroactive notice to surrender on another ground. As I have said, three of the four policies had already been fully paid, and it was only the Mutual policy upon which there could be any default in payment of premium; yet the defendant was given no opportunity at all to cure the default and to pay the premium.
The bank does not seem to rely so much upon nonpayment of interest as justification of its conduct. Its briefs speak generally in the conjunctive of the defendant’s defaults in payment of *723 interest and failure to pay premium, but the two matters cannot be put together. The interest at most, as I have said, was $150; and the failure to pay this amount would hardly have justified the surrender of all four policies. The fact is that the bank stated that it was surrendering the Mutual policy only because of the failure to pay premiums: it gave no notice at all on this ground; it merely presented the defendant with an accomplished fact.
The defendant, to be sure, could have waived the provision of the 20 days’ notice, but there was no waiver here. The policy had already lapsed and had been converted. The defendant was not given the choice of reinstating and of forcing a surrender. At best he was told that the bank might assist in reinstatement after the surrender, but that it was insisting on surrendering immediately. It will not do to say that the defendant did not care to reinstate or that he would not have the means to reinstate the policy after its surrender. When the defendant was told of the bank’s decision the policy had not yet been surrendered and the defendant was in default in the payment of one premium. The defendant conceivably might have been able to satisfy the requirements of the insurance company in the matter of reinstatement; but he was entitled to 20 days ’ time in which to attempt this, and this the bank failed to give him.
From these circumstances, the conclusion is inescapable that the bank acted hastily in foreclosing the defendant’s policy and that it should compensate him for its improvident conduct.
On the matter of damages, I think the answer is clear. The plaintiff is entitled to recover what he would have had to pay to reinstate the policy on the date of the bank’s surrender. He had already been examined for the purposes of reinstatement to the satisfaction of the insurance company. The cost of reinstatement as of October 29, 1948, the date when the policy was improperly surrendered, was $4,586.75, and the defendant should have judgment for that amount. It may be that to replace the policy in its converted form as an extended paid-up policy for a fixed number of years the defendant would have to pay more than the amount I allow; indeed, he asks for that larger amount. But the defendant’s quarrel is not with the insurance company but with the bank (cf. Whitehead v. New York Life Ins. Co., 102 N. Y. 143). "What the defendant gave the bank as collateral security was a life insurance policy under which he was obliged to continue paying premiums, and the value of which would increase with the years. By his default he may have gained an apparent advantage to himself in that he was *724 relieved of the obligation to pay premiums for the extended life of the policy, but by doing so he impaired the value of the security to the bank. For, contrary to the case of an ordinary life policy, the value of the extended term policy would decrease with the passage of time, and it was because of the impairment to the security by the default that the bank surrendered the policy. It was acting improperly not with respect to what it had received from the defendant, but with respect to something of lesser value that had been created by the defendant’s conduct. In those circumstances, it seems to me that the defendant should recover the “ reinstatment cost ” of the original policy and not the ‘‘ replacement value ’ ’ of the converted form. In Toplitz v. Bauer (116 N. Y. 325, supra), the insured was in poor health; there could be no question of reinstatement (there had been no change in the form of the policy) and the court sanctioned a recovery of almost the face amount of the policy. It should be a corollary of the principle of that case that 11 reinstatement cost ” should be the amount of recovery here. Guggenheim v. Rasquin (110 F. 2d 371) dealt with the value of a policy for gift tax purposes and is not relevant.
To return to the plaintiff’s complaint, there will be judgment in its favor on the note for the amount agreed on at the trial, $1,546.31, with interest from January, 1945, with 20% of the principal sum as attorney’s fees. On the counterclaim, there will be judgment for the defendant for the amount of $4,586.75 with interest.